# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SAINT JOSEPH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | ) Case No. 15-006008-04-CR-SJ-GAF |
| | ) |
| ERIC SCOTT GRAHAM, | ) |
| | ) |
|     Defendant. | ) |

**DEFENDANT ERIC SCOTT GRAHAM'S SENTENCING MEMORANDUM**

COMES NOW Defendant Eric Scott Graham, by and through his attorney, and hereby files this Sentencing Memorandum to aid the Court in imposing a sentence which is sufficient but not greater than necessary to serve the objectives of sentencing, as reflected in 18 U.S.C. § 3553(a).

**I. INTRODUCTION**

On July 6, 2016, Mr. Graham entered a plea of guilty to a lesser-included offense within Count 1 of the Indictment, charging a conspiracy to distribute 50 grams or more of methamphetamine. Through his plea, Mr. Graham accepted complete responsibility for his actions.

Mr. Graham hopes to show the Court that there are comparatively distinct and unique circumstances surrounding his illegal behavior. Without offering justification or excuse, Mr. Graham respectfully submits that his illegal conduct was partly

1

driven by his addiction to methamphetamine, and a difficult personal history involving childhood abuse and neglect. Mr. Graham respectfully asks the Court to consider the following in imposing sentence in this case.

## II. STANDARDS FOR IMPOSING SENTENCE

As the Supreme Court has long recognized, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). With the United States Sentencing Guidelines now rendered "advisory only," *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), a district court has substantial discretion in fashioning a sentence appropriate to the individual circumstances of the defendant and the unique facts of the offense. While the Court must consider the Guideline range in a case, "the Guidelines are not the only consideration." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). See *Kimbrough*, 128 S. Ct. at 564 ("the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence").

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined that district courts must consider all the sentencing factors under 18 U.S.C. §3553(a)(1)-(7) without giving

2

mandatory weight to the Guidelines. 18 U.S.C. § 553(a) states, in pertinent part, as follows:

> (a) Factors to be considered in imposing a sentence.--The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed–
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for...
>
> (5) any pertinent policy statement...
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victim of the offense.

In addition, a district court "may not presume that the Guidelines range is reasonable," and instead "must make an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597. Moreover, the Supreme Court has specifically ruled that, in balancing the §3553(a) factors, a judge may determine that, "in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." *Kimbrough*, 128 S. Ct. at 564. See *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) (a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or [that] the case warrants a different sentence regardless"). A district court may now vary from the applicable guideline range "based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 128 S. Ct. at 570.

### III. SENTENCING GUIDELINES CALCULATIONS

There is an unresolved objection to the advisory Sentencing Guideline range.

**The Offense Conduct**

**Paragraph 16:** Of the total drug weight of 23,075 grams of methamphetamine attributed to Mr. Graham in the PSR, <u>20,440</u> grams comes from the following statement by a single cooperating witness/informant:

4

> On August 23, 2012, an interview was conducted with BM. BM met Graham in 2011 while living in St. Joseph, Missouri. BM witnessed Graham with at least 2 ounces of methamphetamine every day over a 1-year period. (2 ounces/approximately 56 grams per day x 365 days = 20,440 grams).

Mr. Graham partially objects to this quantity. While he acknowledged responsibility in his guilty plea for participating in a conspiracy to distribute methamphetamine, Mr. Graham respectfully submits that the statement of this particular witness is an exaggeration of the number of times the witness was in Mr. Graham's presence over the course of the one-year period. This individual was not in Mr. Graham's presence every day during that year-long period. Instead, Mr. Graham believes he saw this witness at most two to four times a week, during which time Mr. Graham did possess two ounces of methamphetamine each time.

Mr. Graham believes that if this witness were produced by the Government at sentencing and subjected to cross-examination, it is likely that he would concede he did not see Mr. Graham every single day for a period of one year, and that his statement to the investigators was an inexact estimate. For this reason, Mr. Graham respectfully suggests that a more plausible and supportable estimate of his drug accountability from BM's statement is 2 ounces, three times per week, for a one year period (2 ounces/approximately 56 grams per day x 156 days = 8,736 grams).

5

Mr. Graham's estimate, incidentally, is more harmonious with the statement of MB, the witness identifying Mr. Graham's principal source of supply during 2011, as set forth in the PSR. MB states that Mr. Graham's principal source of supply in 2010 and 2011 gave Mr. Graham approximately 114 grams of methamphetamine per week, which aligns more closely with Mr. Graham's estimate that he generally saw BM not more than a few times a week.

In the final PSR, the Probation Office states that its estimate in paragraph 56 is based solely on BM's statement, and that the Probation office does not have any additional information to either refute or corroborate BM's statement.

Accordingly, Mr. Graham objects to the statement of BM, in that it exaggerates and overstates the amount of drug weight this witness saw Mr. Graham possess during 2011. Mr. Graham believes that his total drug accountability, based on the statements in the PSR, should be 8,736 grams based on the statement of BM; 2,550 grams based on the statement of MC; and 85 grams based on the statement of CH, for a total drug quantity of 11,371 grams.

**Offense Level Computation**

**Paragraph 22:** The guideline for violation of 21 U.S.C. § 841(a)(1) offenses is found in USSG § 2D1.1 of the Guidelines. In this case, pursuant to these objections, the defendant should be responsible for 11.37 kilograms of methamphetamine. Subsection (a)(5) and (c)(3) provide that an offense involving conspiracy to

6

distribute at least 5 KG but less than 15 KG of methamphetamine has a base offense level of 34.

**Sentencing Options**

**Paragraph 78:** After reduction of Mr. Graham's total offense level to 31, with a criminal history category of IV, the guideline imprisonment range should be 151 to 188 months.

IV. **APPLICATION OF § 3553(a) FACTORS**

   a. *Nature and Circumstances of the Offense, and History and Characteristics of the Defendant.*

   1. Mr. Graham's Drug Addiction Contributed to the Offense Conduct.

Mr. Graham has struggled his entire adult life with methamphetamine addiction. He has been a daily user of methamphetamine since age of 17, and tested positive several times for methamphetamine while released on bond in this case. Mr. Graham would clearly benefit from long-term drug treatment.

While drug abuse and addiction was traditionally an improper consideration for under the mandatory Guideline regime, it is no longer considered so under the advisory Guideline regime. *See, e.g., United States v. Garcia*, 497 F.3d 964, 971-72 (9th Cir. 2007) (remanding for reconsideration where court stated it could not consider defendant's addiction to drugs); *United States v. Cani*, 545 F. Supp. 2d 1235, 1243, 2008 U.S. Dist. LEXIS 11087 (M.D. Fla. 2008) ("there is no prohibition against factoring drug addiction

7

into the § 3553 calculus. In fact, § 3553(a)(1) compels a sentencing court to consider the history and characteristics of the defendant… For this reason, it is entirely appropriate to consider a defendant's drug addiction in fashioning an appropriate sentence."). Indeed, the Eighth Circuit affirmed a district court's decision to vary downward in a drug trafficking case from a Guideline range of 60 months to a sentence of probation, in part because of evidence that the defendant's "addiction to pain medication contributed to the criminal activity alleged in the indictment." *United States v. McFarlin*, 535 F.3d 808, 811 (8th Cir. 2008).

There can be little doubt that Mr. Graham's addiction to methamphetamine had much to do with his illegal conduct. Therefore, Mr. Graham respectfully suggests that this factor, considered in conjunction with all the other factors identified herein, merits consideration at sentencing.

2. History of Abuse

Given Mr. Graham's difficult childhood circumstances, which involved sexual abuse by a babysitter at ages 7 and 8, it is not surprising that he has a history of property crime and drug-related criminal behavior. Studies have shown that abuse and neglect experienced during childhood are predictors of crime and arrests in early adulthood. *See* Institute of Medicine & National Research Council, New Directions in Child Abuse and Neglect Research 154

(Ann Peterson et al. eds., 2013), http://www.iom.edu/Repors/2013/New-Directions-in-Child-Abuse-and-Neglect-Research.aspx, at p. 144. Moreover, adults with a history of abuse and neglect are more likely than adults without such a history to have committed nontraffic offenses (49 percent versus 38 percent) and violent crimes (18 percent versus 14 percent). *Id*. Simply put, there is significant evidence that childhood abuse and neglect increases the risk for crime and delinquency. *Id*. "Despite differences in geographic region, time period, youths' age and sex, definition of child maltreatment, and assessment technique, these prospective investigations provide evidence that childhood maltreatment increases later risk for delinquency and violence." *Id*. at 145.

Mr. Graham does not make this argument as a means of offering excuses for his behavior, or to suggest that he "never had a chance." Rather, he has now had several months in custody to reflect on the circumstances that led him to where he is today, and believes he is a better man for it. Mr. Graham represents to the Court that he is still young enough to change his course in life, and play a meaningful role in his children's lives, if he is given a chance.

> **b. *18 U.S.C. § 3553(a)(2) – The Need for the Sentence Imposed To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the offense.***

9

A lengthy sentence of incarceration is not always necessary to satisfy this sentencing mandate. Indeed, as observed by the District Judge in *Gall*, probation (or in this case, post-release supervision), "rather than an act of leniency, is a substantial restriction of freedom." *Gall*, 128 S.Ct. at 593. The *Gall* Court emphasized that the defendant would have to "comply with strict reporting conditions along with a [multi]-year regime of alcohol and drug testing." *Id*. The Court also noted that the defendant would "not be able to change or make decisions about significant circumstances in his life, such as where to life or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court." *Id*.

As renowned criminologist Norval Morris has consistently argued, and as reflected in recent Supreme Court decisions, when determining punishment, "the least restrictive (punitive) sentence necessary to achieve defined social purposes should be imposed." Norval Morris, The Future of Imprisonment, University of Chicago Press (1974), p. 59.

Mr. Graham concedes that he must be punished for his actions. However, his punishment should be proportional not only to the social harms caused by his conduct, but also to the social harms caused by depriving him of his liberty for any substantial period. Mr. Graham wishes to play a part in the lives of his children, and depriving them of the support and love of their father would be a

10

social harm caused by imprisoning Mr. Graham for a period longer than necessary, particularly given his efforts at rehabilitation, and acceptance of responsibility.

## V. CONCLUSION

Mr. Graham respectfully requests that the Court consider all the statutory sentencing factors discussed herein, together with any other issue raised by the parties at sentencing.

Respectfully submitted:

**JOHNSTON LAW FIRM LLC**

By: */s/ J. Justin Johnston*
J. Justin Johnston  MO #52252
811 Grand Blvd., #101
Kansas City, MO 64106
Tel: (816) 739-4538
Fax: (816) 421-5403
jjj@johnstonlawkc.com
***ATTORNEY FOR DEFENDANT***

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of December, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system for electronic delivery to all counsel of record.

/s/ J. Justin Johnston
***Attorney for Defendant***